# Richmond.

## RIXEY'S ADM'R v. MOOREHEAD.

### November 28, 1884.

PRINCIPAL AND AGENT—*Case at Bar.*—M., in 1849, then in prime of life, and of more than ordinary business capacity, employed her nephew, R., as her agent, and turned over to him certain bonds and slaves, the interest and hires whereof he was to collect from time to time and pay over. She was familiar with his books, wherein he kept account of these transactions. They made repeated settlements, with those books as their guide, and she gave him receipts, recognizing the correctness of their accounts as kept by him. As late as 1873 those accounts and her receipts showed balance due her of only $73.12, whilst errors, in calculation and otherwise, appear to turn the balance in his favor. He received nothing after that. He died in 1875. Though in his life she had never complained of him, yet, in 1876, she filed her bill praying for a settlement of his accounts as her agent, charging that on a fair settlement his estate owed her a very large sum of money, and alleging that she had had the utmost confidence in his integrity, and had signed many papers at his request, supposing they were only receipts for money paid her by him, then or previously, and charging that any papers signed by her, and purporting to be a full or partial settlement between them, which might be found among his papers, were procured by fraud. R.'s administrator answered, denying all fraud and all indebtedness to her, and set up the said accounts and receipts, showing balance in favor of decedent. Reference being decreed, the master reported that R.'s accounts were in the main correct up to 1859. He then (though her bill made no complaint of it) disallowed a charge by R. against M. as of March, 1864, for $2,200, invested in eight per cent. Confederate bonds, as an investment which "no prudent man would at that time have made of his own money." He also allowed her credit as of 1859 for $1,293.25, as amount retained by him of proceeds of sale of slaves wherein she

had a life interest, but without proof, and for a bond of $300 alleged (without proof) to have been by him collected. By these alterations in the accounts, as kept by R., and by interest, the master reported R.'s indebtedness to M. at $9,542.31, principal and interest, which, however, the court below reduced to $7,628.06, and decreed accordingly. Upon appeal—

HELD :

1. Fraud must be proved, not inferred.
2. The accounts and receipts must be taken as conclusive of the state of indebtedness between this principal and her agent.
3. The agent was entitled to credit for the investment in Confederate bonds.
4. The charge against him for the $1,293.25 was plainly improper.
5. The accounts as kept by the agent and approved by the principal, properly calculated, show such a small difference either way, as not to justify a new account, but to require the dismission of the bill.

Appeal from two decrees of circuit court of Culpeper county rendered April 6th, 1876, and June 30th, 1881, respectively, in the cause of Frances Moorehead against John F. Rixey, administrator, with the will annexed of John H. Rixey, deceased. Opinion states the case.

*John F. Rixey, W. W. Henry,* for the appellant.

*J. G. & W. W. Field, G. D. Gray,* for the appellee.

RICHARDSON, J., delivered the opinion of the court:

This is an appeal from two decrees of the circuit court of Culpeper county, pronounced in the case therein pending in which Frances Moorehead was complainant and John F. Rixey, administrator of John H. Rixey, deceased, was defendant, one of which decrees was rendered on the 6th day of April, 1876, and the other on the 30th day of June, 1881.

The real question in controversy is, whether there is liability on the estate of John H. Rixey, deceased, growing out of his

transactions as agent of the complainant, Mrs. Moorehead, for a long period of years prior to his death, which occurred in 1875.

The complainant filed her bill in March, 1876, the material allegations of which are, that John H. Rixey had acted as her agent from the year 1849 to the time of his death ; that he was a good business man and she had the utmost confidence in him ; that one of the investments made for her by her said agent, John H. Rixey, was in a house and lot in the town of Culpeper, called "Washington Hall " ; that her said agent had never settled with her, but that she was informed that she had signed certain settlements which she charges were procured through fraud and therefore are not binding on her, and that a very large amount of money is due her from the estate of her said agent, and she prays for an account of the transactions of said Rixey as her agent and for general relief.

The defendant, the administrator of the said John H. Rixey, answered complainant's bill, denying all fraud on the part of his testator, and showing what property really went into the hands, and was under the control of John H. Rixey, as the agent of Mrs. Moorehead; that most of complainant's property was in slaves, in which she had only a life estate, and as to which John H. Rixey only collected the hires, which were accounted for by him. The answer denies that John H. Rixey invested funds belonging to Mrs. Moorehead in the property called "Washington Hall," or that he had ever charged her with any such investment, but, on the contrary, alleges that respondent had been directed to sell said property under the will of said John H. Rixey, which he did. And the answer further denies the allegation that John H. Rixey never settled his accounts as agent with Mrs. Moorehead, denies that anything is due her from the estate of his testator, and the respondent filed with his answer a copy of the accounts of John H. Rixey, kept by him from the time of the commencement of his agency to

the date of the last settlement between him and Mrs. Moore-
head in 1873, not very long prior to said Rixey's death, which
occurred in 1875.

On the 6th day of April, 1876, the same day on which the
respondent filed his answer, a decree was rendered referring the
cause to a commissioner of the court, with directions to take an
account of all the actings and doings of John H. Rixey as the
agent of Mrs. Moorehead, showing all the property of every
description belonging to Mrs. Moorehead that went into his
hands as her agent, and what disposition had been made thereof
by him.   The commissioner, after taking the depositions of a
number of witnesses on behalf of Mrs. Moorehead, among them
near relations of both Mrs. Moorehead and John H. Rixey, per-
sons so situated and related to the parties as to afford the best
opportunities for familiarity with what transpired; and with
the books and accounts of said agent before him, on the 9th day
of May, 1879, returned his report, in which he says: "Your
commissioner has devoted much time and trouble to an exam-
ination of the books and papers of John H. Rixey, deceased,
filed with him by John F. Rixey, his administrator; that the
accounts had been in the main correct up to the 1st day of
January, 1859, and that he has, consequently, confined his
investigations chiefly to the charges and credits since that time.
Your commissioner has allowed all the charges made by the
late John H. Rixey against Mrs. Moorehead, except a charge of
$2,200, found in ledger C, page 194, and dated March, 1864,
this charge recites that that sum had then been invested in
Confederate eight per cent. bonds.   This charge your commis-
sioner felt constrained to disallow, for, in his opinion, no pru-
dent man would have at that day invested his money in such
securities.

"Your commissioner has allowed Mrs. Moorehead credit for all
sums which he found credited to her on the books of the said
Rixey, and has also allowed her credit for the sum of $1,293.25

retained in his hands, which sum was part of the proceeds of sale of some slaves on the 23d August, 1859, in which slaves Mrs. Moorehead was entitled to a life estate.

"Your commissioner also credited Mrs. Moorehead with a bond of Dr. S. R. Rixey, which was in the hands of said J. H. Rixey, but cannot now be produced, Dr. S. R. Rixey testifying to its having been paid. With these exceptions your commissioner has followed the entries on the books of the said Rixey," &c.

Notwithstanding this explicit statement by the commissioner, that the accounts were correctly kept by John H. Rixey to 1st January, 1859; that no charge made by said agent, either before or after said date, was disallowed, except said item of $2,200, invested in Confederate bonds, and that he (the commissioner) allowed Mrs. Moorehead credits as he found them on the books of John H. Rixey, yet the commissioner, with strange inconsistency, and without evidence, or any reason assigned by him, departs from the accounts as kept by Rixey, the accuracy of which the commissioner himself had vouched, and allows Mrs. Moorehead credit for said sum of $1,293.25, alleged balance of proceeds of sale of slaves in which Mrs. Moorehead had only a life estate, and which she could not be entitled to; and for the further item of the amount of Dr. S. R. Rixey's bond, both of which items were most unjustly allowed against the estate of John H. Rixey, and, as shown by subsequent proceedings in the cause, were intended to be rejected by the final decree in the case, which, however, was not done, as will hereinafter be shown.

By the account stated and reported by the commissioner, under said decree of April 6th, 1876, he brings the estate of John H. Rixey in debt to Mrs. Moorehead in the sum of $9,139.93, as of the 1st day of January, 1874, of which sum $5,362 is principal, and the residue, $3,777.93, is interest. To this report nine exceptions were endorsed by the defendant, the representative of John H. Rixey, deceased; and at the June

term, 1879, the cause coming on again, the circuit court entered a decree, in which it is said: "The court, without at this time passing upon said report of Commissioner Stallard, doth adjudge, order and decree that said report be recommitted to said Commissioner Stallard, to reform the same according to the evidence now in the cause, and such as may be adduced by either party before said commissioner, and as may be proper." This decree is an anomaly in judicial procedure. The report was excepted to, and it was the duty of the court to pass upon the exceptions and the report, otherwise there could be no justification, no sufficient reason for the delay and expense of retaking the account. Without passing upon the report then in, there could be no warrant for reforming the account. If the exceptions to the report were well taken, or, whether they were or not, if the report was in other respects imperfect or insufficient, it was the duty of the court to recommit, otherwise the exceptions should have been overruled and the report confirmed.

On the 25th day of October, 1879, the commissioner again reported, and this time brought the estate of John H. Rixey in debt in the sum of $9,542.31, principal and interest. It is unnecessary to notice this report in its details. It is only necessary to say that the fundamental errors which characterize the commissioner's first report were by him carried into this second report in aggravated form. To this report the defendant took twenty exceptions, and the complainant one. They need not be referred to, as the principles involved are substantially the same as those involved in the first report, with reference to which we will further consider and dispose of the case. However, on the 7th day of July, 1880, the cause came on again to be heard on said report of October 25th, 1879, with said twenty exceptions by the defendant, when the court entered a decree again recommitting, not only the report, but submitting the exceptions thereto, to the commissioner. Here is the entire body of the decree: "On consideration whereof, the court doth adjudge, order and decree that said report, together with said exceptions, be recom-

mitted to said master, with instructions to reform the same as may be proper upon the evidence now in the cause, or that may in due time be adduced before him."

In response, the commissioner again reports on the 31st day of May, 1881. By this time the commissioner seems to have grown restive and, with the extraordinary judicial powers conferred upon him, self-assertive. He ignores the directions to him in respect to reforming his last report, but with promptness and energy takes up, *seriatim*, the twenty-one exceptions, and curtly disposes of them by overruling each and all. The court, so far as disclosed by the record, signifying no objection to the course taken by the commissioner, and the cause coming on again on the 8th day of June, 1881, a decree was then entered by consent, submitting the cause for determination in vacation. In vacation, to wit: on the 25th day of June, 1881, all the exceptions (one by the complainant and twenty . by the defendant) to the report of the commissioner of May 31, 1881, were renewed.

Again, in vacation, on the 30th day of June, 1881, at the request of the counsel for the plaintiff, the commissioner made a special statement, purporting to reform the accounts as theretofore stated by him, which special statement the court adopted as its own, and made it the basis of the final decree complained of here. Of this special statement and final decree notice will be taken in the conclusion of this opinion. Returning now to consider briefly again the said first decree in the cause, that of April 6th, 1876, and the report of the commissioner made thereunder, it is only necessary to say, that inasmuch as the bill assailed, as fraudulently procured, the settlements claimed by the defendant to have been made between his testator and the complainant, and asked for an account, and that decree going no further than to direct the account prayed for, we are of opinion that there is no error therein.

Now as to the account stated and reported under said decree the commissioner reports, and it is conceded on all hands, that

the accounts to the 1st day of January, 1859, as they were kept by, and appear in the books of John H. Rixey, are correct; and it is reported by the commissioner in his said final special statement, and affirmed by the court, or intended to be by its final decree, that there is in the accounts, as kept by John H. Rixey, no error, either prior or subsequent to January 1st, 1859, except as to said item of $2,200 invested in Confederate bonds in 1864.

The report of the commissioner is a medley of inconsistencies. In response to the decree he first reports that there went into the hands of John H. Rixey, belonging to Mrs. Moorehead, $6,000 of bonds, and $6,000 in value of slaves, when there is not in the record a particle of evidence of either item as stated; and when, as to the slaves, it is a fact, conceded by all, that Mrs. Moorehead only had a life estate. But failing to respond to the decree, the commissioner does not pretend to report in terms what became of said bonds and slaves; nor does he even make said items of property the basis of the account, stated and reported by him, but leaves them entirely disconnected, and proceeds to state his account on the basis of the accounts as kept by Rixey himself, except as to the two items—the alleged balance of proceeds of sale of slaves, and the bond of Dr. Rixey—injected by the commissioner without evidence, the commissioner's statement showing only that Mrs. Moorehead had owned the bonds and had the life estate in the slaves, and not, except by the bare supposition of the commissioner, that said amount of property went into the hands of John H. Rixey.

Then, on the 1st day of January, 1859, there was a conceded balance due John H. Rixey of $1,022.42. Taking this balance to start with, in the account of receipts and disbursements for that year, the commissioner clogs his work with a gross error in crediting Mrs. Moorehead by said sum of $1,293.25, assumed by the commissioner to have been received by Rixey from proceeds of sale of slaves, and not accounted for by him. In this way a balance is produced against the estate of Rixey, as of the 1st

day of January, 1860, of $2,098.80. These erroneous charges, incorporated into the account by the commissioner, were carried by him into successive annual statements, the wrong being augmented at every step until 1864, when, in stating the account for that year, the $2,200 invested by Rixey in Confederate bonds for Mrs. Moorehead, and charged by him to her, was stricken from the account as kept by him, the result of which was a balance against his estate on the 1st day of January, 1865, of $4,759.85. This balance, with interest, increased with each year to the close of the account, the result being a balance against Rixey's estate as of the 1st day of January, 1874, of $9,139.93, as before stated.

The same commissioner, in obedience to a subsequent decree, before referred to, on the 25th day of October, 1879, reported his reformed statement, not materially different from his first statement and report, except in the increased amount of balance, the result of interest on the former amount found. This time the commissioner ascertains the balance to be, principal $5,884.57, interest $1,598.15, aggregating $7,482.72, as of said 1st day of January, 1874, to which the commissioner adds $2,059.59 for interest on said principal sum above to November 1st, 1879, making total interest charge to that date of $3,657.74, which, added to said principal sum of $5,884.57, makes the estate of John H. Rixey indebted to Mrs. Moorehead on the 1st day of November, 1879, in the sum of $9,542.31.. We have not gone into the details of this report, as it is on the same principle of the first report, and the result is the same except as increased by interest. In fact it is referred to only because it is made the basis of the special statement before referred to, and upon which the final decree complained of is predicated.

Now, as to that special statement, the commissioner says : " At the request of the counsel for the plaintiff, the undersigned commissioner in chancery for the said court, makes the following special statement," &c.

Then the commissioner, proceeding to formulate, charges the estate of John H. Rixey with the sums ascertained by his report of October 25th, 1879, to-wit: principal, $5,884.57, and interest, $3,657.74. Then from said principal he deducts said sum of $1,293.25, alleged balance for proceeds of sale of slaves, leaving the principal at $4,591.32, from which he next deducts the amount of $300, the principal of the Dr. Rixey bond before referred to, leaving the principal at $4,291.32. Then he deducts from the above interest sum of $3,657.74 the sum of $321, the interest which had accrued on said Dr. Rixey bond, leaving thereby the interest reduced to $3,336.74, which added to said reduced principal of $4,291.32 makes precisely the gross amount decreed against the estate of John H. Rixey, to-wit: $7,628.06. Then, at the foot of this tabulated statement, the commissioner says: "Mrs. Moorehead is entitled for her life to the annual interest on the sum of $1,293.25 in addition to the sum of $4,291.32, as of the said 1st November, 1879."

It will thus be seen that while the principal sum of $5,884.57, found by the report of October 25, 1879, is reduced by the item of $1,293.25, alleged balance for slaves sold, and also by $300, the principal sum of the Dr. Rixey bond, no deduction is made from the gross interest sum found of $3,657.74 except the sum of $321, the interest on the Dr. Rixey bond, there being no deduction from said interest sum on account of the interest on said sum of $1,293.25. This distinction attempted by the commissioner and the court below in respect to these two items is inexplicable. Both are admitted in effect to be false charges against the estate of John H. Rixey. Why deduct from the gross principal the principal sum of the Dr. Rixey bond, and from the gross interest the interest improperly carried into and through the amount on that bond, and at the same time reduce the gross principal only by the said principal sum of $1,293.25 without any corresponding reduction on account of the interest which had accrued on that sum, and which to a large extent

makes up said gross amount of interest found by said report of October 25th, 1879 ? It cannot be explained or sanctioned upon any just principle.

Another manifest absurdity, resulting from said special statement and its adoption by the court as the basis of its final decree of June 30th, 1881, is, that while the commissioner, by said statement, singularly enough undertakes to charge the estate of John H. Rixey, in favor of Mrs. Moorehead, with the annual interest on the $1,293.25, when he had just rejected the sum itself as an improper charge, the court, in its decree, though professing to reject (as said special statement did) said sum of $1,293.25, yet actually incorporated that sum in gross into its decree. It will be seen that the gross principal and interest found by said special statement, *i. e.*, principal, $4,291.32, and interest, $3,336.74, make $7,628.06, the gross amount decreed against Rixey's estate, and that said sum of $4,291.32 and said sum of $1,293.25 together make precisely the sum of $5,584.57, the principal sum decreed against the estate of Rixey with interest from the 1st day of November, 1879. Thus the court with one hand rejects and strikes out said false charge of $1,293.25 and with the other puts it back. But let the decree speak for itself. It says : "On consideration whereof, * * * and the plaintiff by counsel having had a special statement this day made by the said commissioner, deducting the sum of $1,293.25 and the sum of $300, the subjects of the fourth and fifth exceptions, from the amount of the principal reported against the defendant in the report of said commissioner of 25th October, 1879, and deducting also the sum of $321, interest on the principal sum of $300, from the amount of interest reported in said commissioner's report of October 25th, 1879, thus correcting all the errors to the prejudice of said defendant contained in said report, and surrendering all claim to the said charge of $300 against said defendant. And the court, adopting said special statement as its own, doth adjudge, order and decree that the said defendant, out of the assets of the

estate of John H. Rixey, deceased, in his hands to be administered, do pay to the said plaintiff, or the attorneys, Field and Gray, the sum of $7,628.06, with interest on $5,584.57, from the first day of November, 1879, till paid," &c.

It is plain that the item of $1,293.25, professed to be rejected, is brought in with the said reduced principal of $4,291.32, and with it make up the principal sum of $5,584.57, decreed against the estate of John H. Rixey. No such methods can be justly sanctioned.

Not only is the decree erroneous in the particulars above pointed out, but also is erroneous in sanctioning the grossly fallacious mode of settlement adopted by the commissioner in his report of October 25th, 1879, the special statement aforesaid falling far short of eradicating the gross errors in that report, and the decree, by some strange mistake, while professing to carry out, actually defeats the main correction intended by the special statement. It is obvious that the original prime object of the complainant's bill was to recover " Washington Hall." That was early in the progress of the cause abandoned, and justly so. Later, as we have seen, the pretended balance alleged to have been retained by John H. Rixey from proceeds of sale of slaves, and the amount of the Dr. Rixey bond, both of which the commissioner, without any evidence, charged to Rixey, have been also abandoned, so that as between the accounts, as kept by John H. Rixey in his lifetime and as stated by the commissioner, the only item really left in dispute is the $2,200 invested in Confederate bonds, which if left charged to Mrs. Moorehead, as it was at the time charged by John H. Rixey, it is apparent that nothing is due her.

The disallowance of this sum was gross error. It nowhere appears that this or any other investment was made upon the judgment of the agent only, without the express sanction of Mrs. Moorehead. On the contrary, there are circumstances strongly indicating that she knew of and approved all the agent's acts, as disclosed by the agent's books, the correctness

of which is repeatedly vouched ·in settlements made and receipts executed by her.   There is in her bill no intimation even
of objection to this charge against her.   Of its existence there
can be no doubt that she was fully informed.   Nor is there any
doubt that she repeatedly and clearly recognized its validity.
Having thus approved by repeated settlements and receipts in
his lifetime the acts of her agent, and then, as soon as he is
dead, suing to upset them upon the most general charges, wholly
unsupported by proof, presents her in no enviable attitude to a
court of equity.

   The fundamental error of the commissioner was in departing
at all from the accounts as kept by the agent.   After the most
careful and rigid investigation, no fraud, nor anything akin to
fraud, is discovered.   On the contrary, the commissioner unmistakably concludes that the accounts were correctly kept by
the agent, except that the commissioner, for reasons of his own,
clearly untenable, refuses to allow the agent credit for the $2,200
invested in Confederate bonds,  ·The result is, that by refusing
credit for this sum, and by improperly injecting into the accounts
the above considered false charges, a heavy balance is found
against the agent as early as January 1st, 1860, and with these
false charges and accruing interest there were necessarily successive increased annual balances to the end of the account as
stated.   This is wholly without the semblance of right.   If, on
the contrary, the commissioner had adhered to the accounts and
settlements, proved to have been made and recognized by Mrs.
Moorehead repeatedly as correct, it is manifest that nothing was
due her.   It is apparent that the balances annually found by
the commissioner, and carried through his statement from January 1st, 1860, to the close, were made up of false charges, as
already shown, and of sums received by the agent in Confederate
notes, but carried by the commissioner, with interest unscaled,
into balances in good money; and this is left by the final decree
uncorrected, except as to the amount, principal and interest, of
said Dr. Rixey bond, which had been erroneously charged to

the estate of John H. Rixey along with the other false charges aforesaid. Hence the large and totally erroneous balance of $7,628.06 decreed against the appellant.

The stated accounts, recognized and acknowledged by Mrs. Moorehead, show that everything was settled and accounted for to the 24th day of September, 1870, when there was due Mrs. Moorehead the sum of $420.12, at which time she executed her receipt to her agent for $100, thereby reducing said balance to $320.12. Immediately following is an entry on Rixey's book indicating that said sum of $320.12 had been paid in full, and a receipt taken, but the date does not appear, and no such receipt is produced. After this there seems to have been no receipts and disbursements until 1873, in which year, as appears from the commissioner's mode of stating the account, said agent is charged with the sum of of $420 received in October, 1872, being interest on the bond of J. T. Jones due Mrs. Moorehead, and one year's interest on that sum, to-wit: $25.20, making gross charges for that year, $445 20. In the same year (1873) Mrs. Moorehead is charged with the following sums paid her by her agent, to-wit: two items of $75 each, one item of $517, evidenced by Mrs. Moorehead's receipt proved to be genuine and so reported by the commissioner, and one item of $21, being commissions allowed on said sum of $420 received by said agent in 1872, making disbursed by said agent in 1873, the sum of $688. From this last sum deduct the amount of receipts for 1873, $445.20, and there is a balance shown in favor of the agent's estate of $242.80. But taking the books of John H. Rixey, the agent, which, with the receipts of Mrs. Moorehead, furnish the only reliable data for the settlement of their accounts, we find, as before explained, that on the settlement made between the parties on the 24th day of September, 1870, and Mrs. Moorehead's receipt of that day, there was a balance then left due her of $320.12, as to which the books of Rixey indicate a payment and receipt in full, but as no such receipt is produced, said sum of $320.12 should be added to the sum of $445.20, the

amount charged for receipts in 1873, making the gross sum of $765.32; from which last sum deduct said sum of $688, for disbursements in 1873, and there appears due to Mrs. Moorehead, as of the 1st of January, 1874, of $77.32. But that even this small balance is due Mrs. Moorehead is by no means certain. Inspection of the accounts as kept by Rixey, the agent, show manifest errors in addition made by Rixey against himself nearly if not quite sufficient to destroy said balance of $77.32. But aside from these, there is an item of $150 for keeping an infirm old slave, Simon, with which Rixey, doubtless by mistake, credited Mrs. Moorehead, when she should have been charged with that amount, it being evident that the old slave was kept by Rixey for Mrs. Moorehead. This item alone, improperly carried into the account of credits to Mrs. Moorehead, is more than equal to any small balance in her favor. In fact it is impossible to say with accuracy, without a careful restatement of the whole account, in whose favor a very small balance might be found. And however it might be, it would be very small, and made up of small mistakes in the details of stating the accounts, not of sufficient importance to warrant the expense of retaking the accounts, and to which we may safely apply the maxim, *de minimis non curat lex.*

Moreover, there is still another receipt of Mrs. Moorehead, to wit: of 30th October, 1873, in these words:

"$487. Received of J. H. Rixey, at different times, to pay for board, &c., four hundred and eighty-seven dollars, which has not been receipted for or charged on his books up to my last settlement with him, which was December 24th, 1870; also thirty dollars cash to-day, October 30th, 1873.

F. MOOREHEAD."

The date, *December* 24th, 1870, was evidently intended to be September 24th, 1870, the time at which there had been a settlement, and the balance of $320.12, then left due to Mrs. Moore-

head. However, this receipt, while it is not in terms a receipt in full, yet bears evidences that it was so intended. Like other receipts executed by Mrs. Moorehead, it shows familiarity with the accounts as kept on the books of her agent, Rixey. It shows, too, a gathering up of omitted items, and the payment then of $30 by the agent to his principal, in addition to the omitted sums aggregating for "board," &c., $487. And in addition is the further strong circumstance, that after the date of this receipt it is not pretended that any sum was received by the agent; that Rixey, as agent, then held the John T. Jones bond for $1,000, and the Latham & Mauzy bond for $1,400, on which the interest had been collected and accounted for by him is true, but after his death his administrator, the appellant, turned over to Mrs. Moorehead both of said bonds, with the interest payments endorsed thereon, and took receipts accordingly. It is not pretended that there were any other bonds or property in the hands of Rixey at his death belonging to Mrs. Moorehead. If there had been they could have been easily traced, and doubtless would have been.

Here, then, is a case in which it clearly appears that the principal was familiar with the books of her agent in which were kept an account of his transactions as agent; a case in which it also appears that repeated settlements were made with the books as a guide and receipts executed by the principal recognizing the correctness of the accounts as kept, not one of which settlements and receipts have been assailed except by charges of fraud of the most general character contained in the bill, and in the same general way repeated in argument here without any evidence to sustain them. Fraud cannot be inferred, it must be alleged and proved. There is nothing in proof even tending to raise a suspicion of fraud touching any transaction of John H. Rixey as the agent of Mrs. Moorehead. It is not pretended that Mrs. Moorehead is a person in any respect incapable of giving intelligent direction to her affairs. On the contrary, she is shown to be a person of more than ordinary business capacity.

Opinion.

It is true she is now quite old, but when the bulk of these transactions were had she was but little past the prime of her life. Settlements made with her agent then have been repeatedly recognized by her as correct. No reason is shown for relieving her from responsibility for her acts. She must like other people stand by her acts intelligently and willingly performed. We are, therefore, of opinion that the said decree of June 30th, 1881, is clearly erroneous and must be reversed and annulled, and a decree entered here dismissing the complainant's bill with costs to the appellant.

DECREE REVERSED.